| | |
|---|---|
| **Case No.** EDCV 19-260-MWF (KKx) | **Date:** May 8, 2019 |
| **Title:** Noel Salazar v. PODS Enterprises, LLC, et al. | |

**Present:** The Honorable MICHAEL W. FITZGERALD, U.S. District Judge

Deputy Clerk:                                  Court Reporter:
Rita Sanchez                                   Not Reported

Attorneys Present for Plaintiff:               Attorneys Present for Defendant:
None Present                                   None Present

**Proceedings (In Chambers):**     ORDER RE: MOTION TO REMAND TO STATE COURT [17]

Before the Court is Plaintiff Noel Salazar's Motion to Remand to State Court (the "Motion"), filed on March 11, 2019. (Docket No. 17). On April 8, 2019, Defendant PODS Enterprise, LLC filed an Opposition. (Docket No. 20). Plaintiff filed a Reply on April 15, 2019. (Docket No. 21). The Court has read and considered the papers filed on the Motion and held a hearing on April 29, 2019.

For the reasons discussed below, the Motion is **GRANTED**. Defendant has not plausibly established by a preponderance of the evidence that the amount in controversy exceeds $75,000 for diversity jurisdiction or $5,000,000 for the Class Action Fairness Act of 2005 ("CAFA"), 28 U.S.C. § 1332(d).

## I.     BACKGROUND

On January 10, 2019, Plaintiff commenced this action in the Los Angeles County Superior Court. (Notice of Removal ("NoR"), Ex. A ("Complaint") (Docket No. 1-1)).

The Complaint contains the following allegations:

Plaintiff, a California resident, is currently employed by and works as a forklift operator for Defendant. (*Id.* ¶ 8). Defendant is "a moving and storage company with locations throughout California, nationwide, and globally." (*Id.* ¶ 12). Defendant is a

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No. EDCV 19-260-MWF (KKx)                    Date: May 8, 2019
Title:    Noel Salazar v. PODS Enterprises, LLC, et al.

Florida corporation, where it also has its principal place of business. (*See id.* ¶ 13; Declaration of Laureen Druker ("Druker Decl.") ¶ 3 (Docket No. 1-4)).

Plaintiff alleges that, as a forklift operator, he works at Defendant's location in Chino Hills. (Compl. ¶ 29). He also alleges that he "typically worked five days per week" and "was typically scheduled to work between eleven to thirteen hours a day." (*Id.* ¶ 30). Plaintiff further alleges that Defendant did not properly compensate him for all hours worked and failed to provide proper overtime wages, compliant meal and rest breaks, reimbursement of necessary expenditures, accurate itemized wage statements, and all wages due upon separation from employment for other employees. (*Id.* ¶ 31).

As to meal breaks, Defendant is alleged, for example, to have "maintained a pattern and practice of not providing Plaintiff . . . with legally compliant meal periods" and employees "were regularly required to work through their meal periods and receive less than thirty (30) minute meal periods." (*Id.* ¶¶ 34–35). Plaintiff and other employees were also "consistently interrupted by their supervisors during their meal breaks." (*Id.* ¶ 35). When Plaintiff and employees worked shifts longer than ten hours, Defendant "never provided [them] with a second meal period . . . ." (*Id.*).

As to rest breaks, Defendant is alleged to "not have a rest break policy that complied with California law" in place. (*Id.* ¶ 37). Defendant "occasionally only authorized and permitted one rest break in a shift and required Plaintiff and other aggrieved employees to combine the rest break with the meal break." (*Id.* ¶ 38). Plaintiff and other employees "were either never provided a rest break in a shift, a second rest break in a shift, or a third rest break when working shifts longer than 10 hours." (*Id.*).

As to overtime wages, Defendant is alleged to have required Plaintiff and other employees "to perform work while off-the-clock during their meal breaks . . . and pre- and post-shift by responding to [work on] their personal cell phones." (*Id.* ¶ 41). Plaintiff and other employees also "did not receive all overtime ages owed to them because Defendant[] failed to include non-discretionary bonuses in the calculation of the regular rate of pay for purposes of paying overtime." (*Id.*). Defendant also required Plaintiff and other employees to "utilize their personal cell phones and pay for

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  EDCV 19-260-MWF (KKx)                    Date:  May 8, 2019
Title:      Noel Salazar v. PODS Enterprises, LLC, et al.

toll fees in the discharge of their duties without providing reimbursement." (*Id.* ¶¶ 42–43).

As to wage statements, Defendant is alleged to have failed to provide "accurate itemized wage statements." (*Id.* ¶ 44). Plaintiff alleges that the "wage statement omissions and inaccuracies were not a result of an isolated and unintentional payroll error due to an inadvertent mistake," but rather a "result of knowing and intentional omissions . . . ." (*Id.* ¶ 45).

Plaintiff alleges that Defendant maintained these "patterns and practices" in violation of California labor laws and asserts nine wage-and-hour-related claims against Defendant: (1) unpaid meal period premiums; (2) unpaid rest period premiums; (3) unpaid minimum wage; (4) unpaid overtime wages; (5) unpaid reimbursements of necessary expenditures; (6) non-compliant wage statements; (7) final wages not timely paid; (8) violation of California's Unfair Competition Law ("UCL"), Cal. Bus. & Profs. Code § 17200 *et seq.*; and (9) violation of California's Private Attorneys General Act of 2004 ("PAGA"), Cal. Lab. Code § 2698, *et seq.* (*Id.* ¶¶ 75–191).

On February 8, 2019, Defendant timely removed the action, invoking this Court's diversity jurisdiction and jurisdiction pursuant to CAFA. (NoR ¶¶ 5–6).

## II.  DIVERSITY JURISDICTION

### A.  Legal Standard

The Ninth Circuit employs the following framework for determining the amount in controversy on removal. First, a "court may consider whether it is 'facially apparent' from the complaint that the jurisdictional amount is in controversy." *Singer v. State Farm Mut. Automobile Ins. Co.*, 116 F.3d 373, 377 (9th Cir. 1997). If not, the court may consider facts in the removal petition and require parties to submit "summary-judgment-type evidence" relevant to the amount in controversy. *Id.*; *see also Corbelle v. Sanyo Elec. Trading Co.*, No. CV03-01509, 2003 WL 22682464, at *3 (N.D. Cal. Nov. 4, 2003).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  EDCV 19-260-MWF (KKx)                              Date:  May 8, 2019
Title:     Noel Salazar v. PODS Enterprises, LLC, et al.

### B. Discussion

As a preliminary matter, neither party appears to dispute that it is not facially apparent from the Complaint that the jurisdictional amount is in controversy. Rather, Plaintiff's argument is that Defendant has failed to satisfy its burden to prove by a preponderance of the evidence that $75,000 is in play. (Mot. at 7). Defendant argues that it "has established the requisite amount in controversy using reasonable and conservative assumptions that are consistent with the broad allegations in the Complaint." (Opp. at 4).

***Failure to provide meal and rest breaks.*** Defendant assumes a 100% violation rate, or one meal break and one rest break violation per day that Plaintiff works. (*Id.* at 6–7). Defendant argues that these assumptions are based on Plaintiff's allegations that he "typically" worked five days a week and was "typically" scheduled to work between eleven and thirteen hours a day. (*Id.* at 6 (citing Compl. ¶ 30)). Defendant finally contends that, based upon these reasonable assumptions, Plaintiff has placed at least **$15,965.94** in controversy for his claims of failure to provide meal and rest breaks. (*Id.* at 7).

The Court disagrees with Defendant that Plaintiff's allegations can be read to support its assumption of a 100% violation rate. As pointed out by Plaintiff, Defendant has misconstrued his allegations that he ***typically*** worked five days a week and eleven to thirteen hours each working day to mean that he ***always*** worked five days a week and eleven to thirteen hours each working day. (Reply at 8). But Defendant has not provided any evidence for such an assumption apart from its own interpretation of Plaintiff's allegations. *See Ibarra v. Manheim Investments, Inc.*, 775 F.3d 1193, 1199 (9th Cir. 2015) (concluding that "[b]ecause the complaint does not allege that [the defendant] universally, on each and every shift, violates labor laws by not giving rest and meal breaks," the defendant bears the burden to justify its assumption of a 100% violation rate).

Moreover, as noted above, Plaintiff alleges that he and other employees were "***regularly*** required to work through their meal periods" and were "***consistently*** interrupted by their supervisors during their meal periods," rather than always missing

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  EDCV 19-260-MWF (KKx)                    Date:  May 8, 2019
Title:    Noel Salazar v. PODS Enterprises, LLC, et al.

their meal periods.  (*See id.* ¶¶ 34–35 (emphasis added)).  As to the rest breaks, Plaintiff similarly alleges that he and other employees were "*occasionally* only authorized" to take their breaks, rather than never being authorized to take them.  (*See id.* ¶ 38 (emphasis added)).

Plaintiff has not directly provided an alternate estimate or what he believes to be a more reasonable assumption.  But based upon these allegations, the Court concludes that reasonable, conservative assumption is one violation per week.  *See, e.g.*, *Blevins v. Republic Refrigeration, Inc.*, No. 2:15-CV-4019-MMM (MRWx), 2015 WL 12516693, at *9 (C.D. Cal. Sept. 25, 2015) (remanding and concluding that "[o]ne violation per seek is a reasonable assumption" based upon the allegation that the defendant "*regularly* deducted a meal period from employees' hours") (emphasis added); *Unutoa v. Interstate Hotels and Resorts, Inc.*, No. 2:14-CV-9809-SVW (PJWx), 2015 WL 898512, at *3 (C.D. Cal. Mar. 3, 2015) (remanding and concluding that an assumption of one missed meal period per week was reasonable where the plaintiff alleged that the defendants "*often*" held events at which he and class members were required to work shifts of as much as twelve hours without taking a meal period) (emphasis added).

At the hearing, Defendant argued that the there are no "magic words" to justify a 100% violation rate, and in my instances, other district courts have assumed a 100% violation rate where the allegations include "consistent", "routine", and "systematic" violations.  Defendant also pointed out that the Court cited some of those cases in its decision in *Herrera v. Carmax Auto Superstores California, LLC*, No. 14- EDCV-776-MWF (VBKx), 2014 WL 12586254 (C.D. Cal. June 12, 2014).  In *Herrera*, the Court concluded that if a "removing defendant who has produced summary-judgment-type evidence about those facts which are within its knowledge—such as the exact size of the putative class, their dates of employment, each employee's salary or wage, and the number of hours worked," then "reasonable, conservative estimates about the frequency of the alleged violations" can be accepted based on the language used in a plaintiff's complaint.  *Id.* at *2.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  EDCV 19-260-MWF (KKx)                    Date:  May 8, 2019
Title:     Noel Salazar v. PODS Enterprises, LLC, et al.

Defendant's reliance on *Herrera*, however, is misplaced.  Crucially, in *Herrera*, the Court did not cite only to cases adopting a 100% violation rate.  *Compare Altamirano v. Shaw Indus., Inc.*, No. C-13-0939 EMC, 2013 WL 2950600, at *7 (N.D. Cal. June 14, 2013) (finding that allegations of policy's "pervasiveness" were sufficient to support 100%t violation rate), *with Jasso v. Money Mart Express, Inc.*, No. 11-CV-5500-YGR, 2012 WL 699465, at *5–6 (N.D. Cal. Mar. 1, 2012) (assumption of *one overtime violation per week* when complaint alleged "uniform policy and scheme" during class period); *Ray v. Wells Fargo Bank NA*, No. 11-CV-1477-AHM (JCx), 2011 WL 1790123, at *6–7 (C.D. Cal. May 9, 2011) (assumption of *one hour overtime per week* proper where allegation was "consistent" violations); *Jimenez v. Allstate Ins. Co.*, No. 10-CV-8486-AHM (FFMx), 2011 WL 65764, at *3 (C.D. Cal. Jan. 7, 2011) (assumption of *one hour of overtime per week* where complaint alleged the plaintiff "regularly and/or consistently worked in excess of eight (8) hours in a day").

And unlike here, the defendant in *Herrera* assumed just one hour of unpaid overtime, one meal break violation, and one rest break violation per week.  *See* 2014 WL 12586254, at *5–6.  The *Herrera* defendant's conservative estimate was "ten minutes of [unpaid] overtime per week" and just "one meal break and one rest break violation per six weeks."  *Id*.  And in denying the *Herrera* plaintiff's motion to remand, the Court concluded even using the most conservative estimates, the amount in controversy was still satisfied.

Accordingly, for his claims of failure to provide meal and rest breaks, the Court concludes that Plaintiff has placed **$3,193.19** [$15,965.94 x .20] in controversy.

***Failure to pay minimum and overtime wages.***  Defendant next argues that its assumption of "at least thirty minutes of unpaid minimum wages and one hour of unpaid overtime wages for each shift" is reasonable.  Defendant again points to Plaintiff's allegations, noting that they "are broad and not significantly limited."  (Opp. at 8).  Defendant also points to Plaintiff's allegations that "he worked for [Defendant] five days each week and worked between eleven to thirteen hours each workday" and that Defendant "regularly and systematically failed to pay him for work performed off-

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  EDCV 19-260-MWF (KKx)                    Date:  May 8, 2019
Title:     Noel Salazar v. PODS Enterprises, LLC, et al.

the-block during meal breaks and pre- and post-shift by responding to calls or messages on his personal cell phone." (*Id.*).

Based upon these assumptions, Defendant contends that Plaintiff places at least **$5,894.00** in controversy for his claim for failure to pay minimum wages, which includes liquidated damages. (*Id.* at 9). Defendant also contends that Plaintiff places $11,975.57 in controversy for his failure to pay overtime wages claim. (*Id.* at 10). Defendant notes that it instead uses **$5,853.42**, an even more conservative estimate by "[r]educing the calculation on Plaintiff's overtime claim to thirty minutes per workday." (*Id.*).

Again, Defendant assumes a 100% violation rate without any factual or evidentiary support. And as discussed above, when a 100% violation rate is not supported by a factual or evidentiary basis, courts in this district have found that a conservative 20% violation rate—or one hour of overtime pay per week and 30 minutes of minimum pay per week—to be reasonable. *See, e.g.*, *Mendoza v. Savage Servs. Corp.*, No. 2:19-CV-122-RGK (MAAx), 2019 WL 1260629, at *2 (C.D. Cal. Mar. 19, 2019) (remanding case by applying a "20% violation rate to calculate [the plaintiff's] overtime claim" and rejecting an unsupported assumption of a "100% violation rate without any factual or evidentiary support"); *Blevins*, 2015 WL 12516693, at *10 (remanding and applying a 20% violation rate based upon the plaintiff's allegation that the defendant "regularly miscalculated overtime compensation").

Accordingly, for his claims of failure to pay minimum and overtime wages, the Court concludes that Plaintiff has placed **$2,349.48** [($5,894.00 + $5,853.42) x .20] in controversy. The Court separately notes that this estimate ignores the fact that some of the minimum wages may overlap with overtime wages, an issue not addressed by either party and would likely decrease the amount in controversy even more.

***Failure to provide accurate itemized wage statements***. Defendant argues that Plaintiff alleges that it "knowingly and intentionally failed to provide Plaintiff accurate itemized wage statements with each wage payment." (Opp. at 10). Based upon Plaintiff's allegations, Defendant contends that it "reasonably assumed the $4,000

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  EDCV 19-260-MWF (KKx)                     Date:  May 8, 2019
Title:      Noel Salazar v. PODS Enterprises, LLC, et al.

maximum penalty would apply." (*Id.* at 11).  Defendant, however, uses a more conservative estimate of $2,550, based upon "applying a *minimum* statutory penalty of $50 for the first violation and $100 for subsequent violations for each of the 26 wage statements that Plaintiff received."  (*Id.* (emphasis added)).

Because Plaintiff does not respond to this argument and because Defendant's estimate using the minimum statutory penalty appears to be reasonable, the Court concludes that Plaintiff has placed **$2,550.00** in controversy for his claim of failure to provide accurate itemized wage statements.

*Failure to timely pay wages upon separation.*  Under California law, if an employer willfully fails to pay an employee for all wages owed upon separation, the "wages of the employee shall continue as a penalty from the due date thereof at the same rate until paid or until an action therefor is commenced; but the wages shall not continue for more than 30 days." Cal. Labor Code section 203.

Here, Defendant estimates that the reasonable measure for this penalty totals $5,485.58.  (Opp. at 19; NoR ¶ 42).  Defendant arrives at this figure by first noting that Plaintiff's daily pay rate, $182.85, is calculated using his gross wages for the 2018 calendar year (or $47,541.68) divided by the number of work days in 2018.  (NoR ¶ 42).  Defendant then multiples Plaintiff's daily rate by 30, the maximum number of days allowed by section 230.  (*Id.*).

Similar to the claim for failure to provide accurate wage statements, Plaintiff does not dispute Defendant's calculations.  Accordingly, the Court concludes that Plaintiff has placed **$5,485.58** in controversy for his claim of failure to timely pay wages upon separation.

*PAGA civil penalties.*  Defendant argues that its "estimate of PAGA penalties applicable to each payment statement is reasonable based on Plaintiff's allegations." (*Id.* at 11).  Defendant provides the following calculations:

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  EDCV 19-260-MWF (KKx)                    Date:  May 8, 2019
Title:    Noel Salazar v. PODS Enterprises, LLC, et al.

| Labor Code Sections | Penalties | Allegations | |
|---|---|---|---|
| § 2699(f) | $100 for each aggrieved employee per pay period for the initial violation, $200 for each employee per pay period for each Subsequent violation | Plaintiff applies this to alleged (1) meal period violations, (2) rest period violations, (3) failure to pay minimum and regular wages, (4) failure to pay overtime wages, (5) failure to provide accurate wage statements, and (6) failure to reimburse business expenses | $3,100 per violation **Total: $18,600** |
| § 225.5 | $100 for initial violation of failure to pay all wages; $200 for each subsequent violation | Plaintiff applies this to alleged failure to pay (1) meal period premiums, (2) rest period premiums, (3) minimum wages, and (4) overtime wages | $3,100 per violation **Total: $12,400** |
| § 210(a) | $100 for initial violation, $200 for subsequent violation | Plaintiff applies this to alleged failure to pay wages | $3,100 |
| § 226.3 | $250 per violation in an initial citation, and $1,000 for each violation in a subsequent citation | Plaintiff applies this to alleged failure to maintain accurate records | $250 |
| § 1174.5 | Civil penalty of $500 for failure to maintain accurate records | Plaintiff applies this to alleged failure to maintain accurate records | $500 |
| § 1197.1 | $100 for initial pay period; $250 for subsequent pay period for paying less than minimum wage | Plaintiff applies this to alleged failure to pay all minimum wages | $3,350 |
| § 558 | $50 for initial violation, $100 for subsequent violation | Plaintiff applies this to alleged (1) meal period violations, and (2) rest period violations | $3,100 |
| **Total** | | | **$41,300** |

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No. EDCV 19-260-MWF (KKx)                    Date:  May 8, 2019
Title:     Noel Salazar v. PODS Enterprises, LLC, et al.

(*Id.* at 12–13).  Defendants also note that the Court could either include the full $41,300 in calculating the amount in controversy or "only 25% of the penalties inuring individually to Plaintiff . . . ."  (*Id.* at 14).

Plaintiff offers two objections to Defendants' calculations:

*First*, Plaintiff argues that while he "alleges alternate theories for how each Labor Code provision was violated, he does not allege that he can recover multiple penalties for violations of one statute [*i.e.*, stacking]."  (Reply at 10).  Plaintiff also argues that "[e]ven if [he] prevails on each of his causes of action, he can only recover one penalty per Labor Code section violation."  (*Id.*).  The Court is not convinced.

Plaintiff cites no authority establishing that PAGA penalties could not be awarded for every cause of action under which they are alleged, so it is possible (although highly unlikely) that he could recover PAGA penalties for each separate type of Labor Code violation.  Moreover, other district courts have allowed the amount in controversy to be calculated by aggregating all potential PAGA penalties alleged as to each claim.  *See, e.g.*, *Smith v. Brinker Intern., Inc.*, No. 10-CV-213-VRW, 2010 WL 1838726, at *2–6 (N.D. Cal. May 5, 2010) (stacking PAGA penalties in determining the amount in controversy in an individual action and granting motion to remand); *Pulera v. F & B, Inc.*, No. 2:08-CV-275–MCE, 2008 WL 3863489, at *2–3 (E.D. Cal. Aug. 19, 2008) (concluding that the amount in controversy was not met despite stacking all PAGA penalties).

Indeed, because Plaintiff requests PAGA penalties be awarded for each of his claim, he has placed multiple PAGA penalties in controversy for the purposes of the Complaint.  *See Schiller v. David's Bridal, Inc.*, No. 1:10-CV-616-AWI, 2010 WL 2793650, at *6 (E.D. Cal. July 14, 2010) (concluding that the defendant "may stack" all alleged PAGA penalties and noting that the plaintiff "cannot use PAGA civil penalties as both a sword and a shield by requesting in her [complaint] that PAGA penalties be awarded for each of seven (7) causes of action, and then arguing [against stacking] . . . for purposes of calculating the amount in controversy").

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  EDCV 19-260-MWF (KKx)                    Date:  May 8, 2019
Title:    Noel Salazar v. PODS Enterprises, LLC, et al.

*Second*, Plaintiff argues that "if the Court finds that Defendant has carried its burden in proving the PAGA penalties, the Court should only take into account Plaintiff's portion of the 25% that aggrieved employees may recover." (Reply at 11). Both parties correctly note that there is a split in authority as to whether 25% or 100% of the PAGA penalties should be used in calculating the amount in controversy. (Opp. at 14; *Id.*).

One approach is to consider only a plaintiff's stake in the 25% share distributed to aggrieved employees. *See, e.g.*, *Van Steenhuyse v. UBS Fin. Servs., Inc.*, 317 F. Supp. 3d 1062, 1069 (N.D. Cal. 2018) (concluding that "the 75% share of any PAGA recovery to be paid to the LWDA should not be aggregated with plaintiff's 25% share to establish the amount in controversy threshold"). The other approach is to take into account 100% of the penalties stemming from the plaintiff's claims, even though 75% does not go to that plaintiff. *See, e.g.*, *Schiller*, 2010 WL 2793650, at *8 (concluding that "100% of PAGA penalties may be included" for purposes of calculating the amount in controversy); *Patel v. Nike Retail Servs., Inc.*, 58 F. Supp. 3d 1032, 1048 (N.D. Cal. 2014) ("For these reasons, the entire amount of PAGA penalties attributable to Patel's claims count towards the amount in controversy.").

The Court adopts the former approach (*i.e.*, considering only Plaintiff's 25% stake in the PAGA penalties) and views as particularly persuasive the following explanation:

> The Court sees no logical reason for courts to refuse to consider one portion of an award that the plaintiff will not recover (the other aggrieved employees' shares), but take into account another portion that the plaintiff will not recover (LWDA's share). Including LWDA's share in the calculation would come into tension with *Urbino*'s language that California is not a "citizen" for diversity purposes. It would also greatly increase the number of cases that defendants could remove to federal court. That reality runs counter to the congressional intent to restrict federal jurisdiction, . . . the general presumption against removal

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  EDCV 19-260-MWF (KKx)                    Date:  May 8, 2019
Title:     Noel Salazar v. PODS Enterprises, LLC, et al.

jurisdiction, . . . [and the Ninth Circuit's] description of PAGA actions as quintessential California disputes.

*Sloan v. IHG Mgmt. (Maryland) LLC*, No. 19-CV-21-DMG (JCx), 2019 WL 1111191, at *2 (C.D. Cal. Mar. 11, 2019) (remanding and "only tak[ing] into account Plaintiff's portion of the 25% that aggrieved employees may recover").

Accordingly, the Court concludes that Plaintiff has placed **$10,325.00** [$41,300 x .25] in controversy for his PAGA claim.

In sum, the Court concludes that Plaintiff has placed into controversy $23,903.25, itemized as follows:

- $3,193.19 for his claims of failure to provide meal and rest breaks;

- $2,349.48 for his claims for failure to pay minimum and overtime wages;

- $2,550.00 for his claim of failure to provide accurate itemized wage statements;

- $5,485.58 for his claim of failure to timely pay wages upon separation; and

- $10,325.00 for his PAGA claim.

### C.  **Attorneys' Fees**

Attorneys' fees may be factored into an amount in controversy determination where they are available pursuant to the statute or statutes underlying the plaintiff's claims. *See Galt G/S v. JSS Scandinavia*, 142 F.3d 1150, 1156 (9th Cir. 1998) ("[W]here an underlying statute authorizes an award of attorneys' fees, either with mandatory or discretionary language, such fees may be included in the amount in controversy."). Here, Plaintiff seeks attorneys' fees pursuant to California Labor Code sections 218, 226(e)(1), and 1194, and California Code of Civil Procedure section 1021.5. (*See* Compl. at Prayer for Relief). Therefore, it is proper to include some amount of attorneys' fees in the amount in controversy calculation.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  EDCV 19-260-MWF (KKx)                          Date:  May 8, 2019
Title:     Noel Salazar v. PODS Enterprises, LLC, et al.

As an initial matter, both parties agree that in determining the amount of attorneys' fees, the Court may consider fees incurred up to the date of removal ***and*** through the entire action.  (*See* Opp. at 14 (citing *Fritsch v. Swift Transp. Co. of Ariz., LLC*, 899 F.3d 785, 794 (9th Cir. 2018) (concluding that "[b]ecause the law entitles Fritsch to an award of attorneys' fees if he is successful, such future attorneys' fees are at stake in the litigation, and must be included in the amount in controversy"); Reply at 12 n.1 (same)).

As to the amount of attorneys' fees, Defendant offers two figures.  In the Notice of Removal, Defendant contends that "[i]t is reasonable to assume Plaintiff's attorneys' fees will exceed $15,000 for purposes of calculating the amount in controversy, even if his claim proceeds solely on an individual basis."  (NoR ¶ 48).  In the Opposition, Defendant argues that "100 hours can be reasonably be assumed to be expended by counsel in litigating single plaintiff wage-and-hour claims."  (Opp. at 17 (citations omitted)).  And even at "counsel's lowest hourly associate rate of $400 per hour, this represents at least $40,000 in attorneys' fees."  (*Id.* at 18 (citation omitted)).

Because the Court has previously concluded that the amount in controversy relating to Plaintiff's claims is $23,903.25, using either $15,000.00 or $40,000.00 is insufficient to meet the jurisdictional requirement.

## III.  CAFA JURISDICTION

### A.  Legal Standard

Under CAFA, the Court has "original jurisdiction of any civil action in which the matter in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs, and is a class action in which" there is minimal diversity.  § 1332(d).

"Congress designed the terms of CAFA specifically to permit a defendant to remove certain class or mass actions into federal court . . . [and] intended CAFA to be interpreted expansively."  *Ibarra*, 775 F.3d at 1197.  In a notice of removal, a defendant need only plausibly allege that these prerequisites are met.  *Dart Cherokee Basin Operating Co. v. Owens*, 135 S. Ct. 547, 553 (2014).  Once confronted with a

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  EDCV 19-260-MWF (KKx)                    Date:  May 8, 2019
Title:    Noel Salazar v. PODS Enterprises, LLC, et al.

motion to remand, however, the removing defendant bears the burden of establishing jurisdiction by a preponderance of the evidence.  *Id*. at 553–54; *Ibarra*, 775 F.3d at 1197–98.

Relevant here, where a plaintiff moves to remand based upon the amount in controversy, both "parties may submit evidence outside the complaint, including affidavits or declarations, or other 'summary-judgment type evidence relevant to the amount in controversy at the time of removal.'"  *Ibarra*, 775 F.3d at 1199–1200. "Under this system, CAFA's requirements are to be tested by consideration of real evidence and the reality of what is at stake in the litigation, using reasonable assumptions underlying the defendant's theory of damages exposure."  *Id*. at 1198.  A removing defendant bears the burden of convincing the district court that the $5 million CAFA threshold is met, and the defendant's "assumptions cannot be pulled out of thin air but need some reasonable ground underlying them."  *Id*. at 1199.

### B. Discussion

Defendant argues that it has "reasonably estimates that the amount placed in controversy on Plaintiff's putative class claims is $7,446,501.40," summarized as follows:

| Claims | Amount in controversy |
| --- | --- |
| Failure to provide meal periods | $1,962,000.00 |
| Failure to provide rest periods | $1,962,000.00 |
| Failure to pay minimum and regular wages | $981,000.00 |
| Failure to pay overtime wages | $1,471,500.00 |
| Failure to provide accurate itemized wage statements | $328,900.00 |

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  EDCV 19-260-MWF (KKx)                    Date:  May 8, 2019
Title:    Noel Salazar v. PODS Enterprises, LLC, et al.

| Failure to timely pay all wages due upon separation | $741,101.40 |
| Total | $7,446,501.40 |

(Opp. at 24–25).

The Court, however, is not persuaded by Defendant's estimates for the same reasons already discussed.  Defendant again assumes a 100% violation rate, noting that it (1) has "reasonably assumed one meal break violation and one rest break violation per day"; (2) "reasonably assumes putative class members are owed at least 30 minutes of unpaid minimum wages and 30 minutes of unpaid overtime wages during each of the five shifts they worked each week"; (3) assumes that "each of [its] biweekly pay statement failed to reflect all hours worked"; and (4) assumes that "[e]ach of [its] employees would therefore be entitled to the maximum statutory penalty of thirty days" for failure to timely pay wages upon separation.  (*Id.* at 21–23).

The Court concludes, as before and as Plaintiff argues, that a 20% violation rate appears to be a much more reasonable assumption.  (*See* Reply at 14–17).  The total amount in controversy is thus approximately $1,489,300.28 [$7,446,501.40 x .20].

Defendant also notes that attorneys' fees should be included and contends that a 25% benchmark is reasonable.  (Opp. at 23–24).  As an initial matter, the Court is skeptical that Defendant's proposed 25% benchmark is appropriate.  In *Fritsch*, the Ninth Circuit explicitly rejected a per se rule for a 25% benchmark, noting that a "defendant ***must prove*** the amount of attorneys' fees at stake by a preponderance of the evidence" and that a court "***may not relieve the defendant of its evidentiary burden*** by adopting a per se rule for one element of the amount at stake in the underlying litigation."  *See* 899 F.3d at 796 (emphasis added).  The Ninth Circuit explained that a court's calculation of future attorneys' fees may be "limited by the applicable contractual or statutory requirements that allow fee-shifting in the first place"; limited by state law "adopt[ing] the lodestar method for determining reasonable attorneys' fees under certain statutes"; or precluded for legal work on certain types of claims.  *Id.*  A

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  EDCV 19-260-MWF (KKx)                     Date:  May 8, 2019
Title:      Noel Salazar v. PODS Enterprises, LLC, et al.

district court's determination on attorneys' fees at stake therefore "must take into account these statutory and contractual restrictions." *Id.*

Because it is Defendant's burden to establish the amount of attorneys' fees for CAFA jurisdiction, the Court could follow the Ninth Circuit's mandate in *Fritsch* and simply use $0.  But even if the Court were to include a 25% benchmark for attorneys' fees as requested by Defendant, the total amount in controversy would only be $1,861,625.35 [$1,489,300.28 x 1.25], still well below the jurisdictional requirement under CAFA.

Like it did with the amount in controversy requirement for diversity jurisdiction, Defendant has failed to establish that the amount in controversy under CAFA exceeds $5,000,000.00 by a preponderance of the evidence.

## IV.  **CONCLUSION**

The Motion is **GRANTED**.  The Court **REMANDS** this action to the Los Angeles County Superior Court.

This Order shall constitute notice of entry of judgment pursuant to Federal Rule of Civil Procedure 58.  The Court **ORDERS** the Clerk to treat this Order, and its entry on the docket, as an entry of judgment.  Local Rule 58-6.

IT IS SO ORDERED.